**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

ADAM M. MILAZZO,

                Plaintiff,

     v.

JOHN CONANT, et al.,

                Defendants.        Case No. 3:15-cv-00230-SLG

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT

Before the Court are two motions: Plaintiff's Motion for Partial Summary Judgment at Docket 44 and Defendants' Motion for Summary Judgment at Docket 46. Both motions have been fully briefed.[1] Oral argument was held on March 13, 2017.

## INTRODUCTION

Plaintiff Adam Milazzo, a self-represented litigant, initiated this action against Defendants John Conant, Jimmie Chynoweth, Michelle Garner, Elaine Bialka, and the State of Alaska, Department of Corrections (collectively "Defendants") for allegedly violating Mr. Milazzo's federal and state constitutional rights by treating Mr. Milazzo as a sex offender for limited purposes.

## BACKGROUND

On March 25, 2011, Adam Milazzo pleaded guilty in state court to one count of Coercion for events that occurred on October 30, 2002.[2] The State had originally charged

---

[1] Docket 56 (Defs.' Opp'n to Mot. for Partial Summ. J.); Docket 81 (Pl.'s Reply); Docket 55 (Pl.'s Opp'n to Mot. for Summ. J.); Docket 69 (Defs.' Reply).

[2] Docket 46-1 (Anchorage Police Department Report) at 1.

Mr. Milazzo with Sexual Assault in the First Degree, and the police report that provided the basis of Mr. Milazzo's criminal charges stated that Mr. Milazzo had forced a victim identified as "H.A." to engage in sexual acts with him.[3] However, pursuant to a plea agreement, Mr. Milazzo pleaded guilty only to Coercion. At the change of plea hearing, Mr. Milazzo's lawyer stated on record that "there [was] no furlough impact implicated in [the] agreement and there [was] no treatment requirement placed in [the] agreement."[4] The prosecutor voiced no disagreement or other response to that statement. The Alaska Superior Court then imposed the negotiated two-year sentence, and Mr. Milazzo was incarcerated at Goose Creek Correctional Center (GCCC) in Wasilla, Alaska.

While incarcerated, on July 3, 2014, Mr. Milazzo submitted a "Request for Interview" in which he stated he sought to apply for a recent job opening at the Point Mackenzie Correctional Farm ("the Farm"), a minimum security facility.[5] Defendant Chynoweth responded to the request by stating that Mr. Milazzo was "not eligible for employment at the Farm." When Mr. Milazzo inquired why he was ineligible, Defendant Chynoweth explained "you are not eligible based on the sexual assault charges in '08. This is per agreement between the Department of Corrections and the Families and Community who live next to and near Point Mackenzie Farm."[6] Mr. Milazzo filed a grievance about the response, asserting it constituted a violation of his federal and state

---

[3] *See* Docket 46-1 at 2.

[4] Docket 46-2 (Change of Plea Hr'g) at 2.

[5] Docket 1-1 at 14; *see also* Docket 48 (Milazzo Aff.) at 5–6, ¶ 14.

[6] Docket 1-1 (Request for Interview) at 17.

constitutional rights as well as a violation of DOC's Policies and Procedures, but DOC personnel determined the action was not a grievable issue.[7]

In September 2014, Mr. Milazzo filed a civil complaint in Alaska Superior Court seeking money damages and injunctive relief against Defendant Chynoweth and Defendant Conant based on alleged violations of Mr. Milazzo's constitutional rights by treating him as a sex offender for purposes of Farm employment without providing him specific procedural protections.[8]

On February 1, 2015, Mr. Milazzo submitted another "Request for Interview," asking to be moved up the priority list for substance abuse treatment so that he could be placed on furlough.[9] Defendant Garner responded that Mr. Milazzo was not eligible for furlough. In a conversation with Defendant Bialka, Mr. Milazzo learned that he was ineligible because the police reports for his underlying criminal offense indicated that his Coercion conviction was "sexual in nature."[10]

Mr. Milazzo then amended his civil complaint and added Defendants Garner, Bialka, and DOC, as well as additional claims, including allegations that treating him as a sex offender for furlough eligibility purposes violated his rights to due process and equal

---

[7] Docket 1-1 (Prisoner Grievance) at 25–27.

[8] *See* Docket 19-1 (Original Compl.) at 1; Docket 19-3 at 2 (Summons).

[9] Docket 1-1 (Request for Interview) at 30.

[10] Docket 1-1 (Milazzo Aff.) at 32; Docket 47 (Martin Decl.) at 1–2, ¶ 3.

protection.[11]  On November 24, 2015, Defendants filed a Notice of Removal, as a result of which the state case was removed to federal court.[12]

Meanwhile, on November 9, 2015, Mr. Milazzo filed a "Motion for Enforcement of Amended Judgment and Commitment" in the state criminal case.  In the motion, he argued that in light of the statement his attorney made about furlough during the change of plea hearing, the subsequent imposition of a sentence in conformity with the plea agreement constituted a "controlling oral pronouncement" that "prohibits Mr. Milazzo's conviction for coercion from being used as a basis to deny Mr. Milazzo furlough."[13]  On May 20, 2016, the sentencing judge denied the motion and held that nothing in the Superior Court judgment "prohibits . . .  the Department of Corrections from making a risk assessment based upon their review of the police reports" and any other information they may have for purposed of placement and furlough.[14]

On August 27, 2016, Mr. Milazzo was released from incarceration.  He is now on parole until January 11, 2021 and has filed documentation indicating that DOC currently

---

[11] *See* Docket 1-1 (Am. Compl.).

[12] *See* Docket 1 (Not. of Removal).

[13] Docket 46-5 (Mot. for Enforcement of Am. J. and Commitment).

[14] Docket 46-6 (Status Hr'g Tr.) at 5.  *See also* Docket 46-6 at 5–6:

> Mr. Milazzo: [T]he issue as to what DOC can and cannot look at in their—in their evaluation [of whether an inmate should be treated as a sex offender] is currently in front of the federal court [ . . . ]
>
> Sentencing judge: [Federal court is] the proper venue for [this issue]—it's not a proper venue for me.

requires him to obtain a sex offender evaluation and participate in sex offender treatment if ordered as conditions of his parole.[15]

## **DISCUSSION**

Mr. Milazzo's Amended Complaint sets out the following ten claims against Defendants:

(1) Defendant Chynoweth violated Mr. Milazzo's right to due process under the 14th Amendment of the U.S. Constitution by classifying and treating Mr. Milazzo as a sex offender when he denied Mr. Milazzo's request for employment at the Farm.

(2) Defendants Bialka and Garner violated Mr. Milazzo's right to due process under the 14th Amendment of the U.S. Constitution "by punishing Mr. Milazzo for a crime he did not commit" when they classified and treated Mr. Milazzo as a sex offender for purposes of furlough eligibility.

(3) Defendants Bialka and Garner violated Mr. Milazzo's right to due process under the 14th Amendment of the U.S. Constitution by "deeming Mr. Milazzo furlough ineligible without fair and impartial consideration."

(4) Defendant Chynoweth violated Mr. Milazzo's right to equal protection under the 14th Amendment of the U.S. Constitution by "allowing prisoners similarly situated to Mr. Milazzo to work at the Farm."

(5) Defendants Bialka and Garner conspired together to violate Mr. Milazzo's right to equal protection under the 14th Amendment of U.S. Constitution "by deeming prisoners similarly situated to Mr. Milazzo eligible for furlough, and Mr. Milazzo furlough ineligible."

---

[15] Docket 55 (Pl. Opp'n) at 6 (citing Docket 48-1 (Order of Mandatory Parole) at 129); Docket 81 (Pl. Reply) at 12–13.

(6) Defendant Conant violated Mr. Milazzo's right to due process and to rehabilitation under the Alaska Constitution "by failing to ensure that Mr. Milazzo was afforded a fair and impartial consideration for placement at the Farm."

(7) The State of Alaska, Department of Corrections (DOC), violated Mr. Milazzo's right to due process and rehabilitation under the Alaska Constitution "by failing to afford Mr. Milazzo a fair and impartial consideration for placement at the . . . Farm."

(8) The State of Alaska, DOC, violated Mr. Milazzo's right to due process and rehabilitation under the Alaska Constitution "by failing to provide Mr. Milazzo a fair and impartial consideration for furlough placement."

(9) The State of Alaska, DOC, violated Mr. Milazzo's right to due process and rehabilitation under the Alaska Constitution "by not granting Mr. Milazzo the minimum six months furlough mandated by DOC policy."

(10) The State of Alaska, DOC, violated Mr. Milazzo's right to equal protection under the Alaska Constitution "by failing to treat Mr. Milazzo similar to those situated similar to Mr. Milazzo" for purposes of Farm placement and furlough eligibility.[16]

## I. Jurisdiction

The Court has jurisdiction over Claims 1 through 5 pursuant to 28 U.S.C. § 1331 because each arises under the U.S. Constitution. The Court has supplemental jurisdiction over Claims 6 through 10 pursuant to 28 U.S.C. § 1367 because each of those claims arises from the same transactions or occurrences as Claims 1 through 5.

---

[16] *See* Docket 1-1 (Am. Compl.).

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[17] If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[18] When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[19] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[20] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[21]

Before the Court are Mr. Milazzo's motion for partial summary judgment and Defendants' motion for summary judgment. Both motions cover substantially similar claims and present related arguments. To prevail on his motion, Mr. Milazzo must show that there is no genuine dispute of material fact as to each element of each claim and that

---

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[19] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[20] *Id.* at 248.

[21] *Id.* at 249.

he is entitled to judgment as a matter of law based on those undisputed facts. Because Mr. Milazzo bears the burden of proof at trial, Defendants may prevail if they show that "there is an absence of evidence to support [Mr. Milazzo's] case."[22] If Defendants meet that burden, the burden then shifts to Mr. Milazzo "to designate specific facts demonstrating the existence of genuine issues for trial."[23] For that reason, the Court will first address Defendants' motion; for if Defendants can show that Mr. Milazzo lacks evidence to prove any of his claims and that they are entitled to judgment as a matter of law, then Mr. Milazzo's motion necessarily fails.

## III. Claims for Injunctive Relief

Defendants argue that Mr. Milazzo's Claims 6 through 10 seeking injunctive relief pursuant to state law against Defendant State of Alaska, DOC, and Defendant Conant are moot because Mr. Milazzo has been released to probation.[24] Mr. Milazzo seeks an injunction "ordering that any policy, practice or directive which denies access to jobs at [the Farm] or 'outside' the Goose Creek fence to those who have been charged, but not convicted of, a sex offense" be amended so that only inmates who have actually been

---

[22] *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

[23] *Id.*

[24] Docket 46 (Defs.' Mot. for Summ. J.) at 11. Mr. Milazzo's motion for partial summary judgment and his response to Defendants' motion for summary judgment indicate that he may have intended to seek injunctive relief from the alleged violation of his federal constitutional rights and not only pursuant to the state constitution. *See* Docket 45 at 4–7; Docket 55 at 2–6. Such a claim would not be viable against the State because the State is not a "person" under § 1983. *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). But even if Mr. Milazzo had adequately pleaded such a federal cause of action against Defendant Conant, *see Ex Parte Young*, 209 U.S. 123 (1908), it too would have become moot upon Mr. Milazzo's release from Goose Creek.

convicted of a sex offense are denied such jobs.[25]  He also seeks an injunction ordering Defendants to afford him "fair and impartial consideration" for placement at the Farm and furlough.[26]  And he seeks an order directing Defendants "to purge all of their records, documents and computer files of any reference to Mr. Milazzo as a sex offender or as being in need of sex offender treatment and to rely no further on any sex offender charge, police report and/or presentence investigation report as they relate to Mr. Milazzo having committed a sexual offense."[27]

"An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action."[28]  Here, Mr. Milazzo is no longer in custody and this case was not certified as a class action.[29]  But Mr. Milazzo maintains that despite being released from GCCC, he is still entitled to injunctive relief because "[DOC] is still labeling Mr. Milazzo a sex offender and is requiring Mr. Milazzo to participate in sex offender treatment as a requisite to retain his liberty on parole."[30]  Mr. Milazzo also asserts that if he does not comply with what he maintains is an unconstitutional requirement of his parole, he will

---

[25] Docket 1-1 (Am. Compl.) at 12, ¶ c.

[26] Docket 1-1 (Am. Compl.) at 12–13, ¶¶ d, g, h, j.

[27] Docket 44-1 (Pl.'s Proposed Order) at 6.

[28] *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995).

[29] *See* Fed. R. Civ. P. 23(a); *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("[A] litigant appearing in propria persona has no authority to represent anyone other than himself.").

[30] Docket 55 (Pl. Opp'n) at 6 (citing Docket 48-1 at 129).

be incarcerated and subject to the same policies and practices he was subjected to when he filed this complaint.

To the extent that Mr. Milazzo argues that his claims are "capable of repetition, yet evading review," the Court is unpersuaded. Ineligibility for employment and furlough are not the types of claims that will evade review.[31]

As for Mr. Milazzo's argument that he is still being treated as a sex offender because he is required to submit to sex offender treatment as a condition of his parole, Defendants respond, among other arguments, that the claim was not properly pleaded in Mr. Milazzo's Amended Complaint. Mr. Milazzo's proposed order attached to his motion for partial summary judgment acknowledges that "[t]he active Complaint in this case only alleged claims regarding Defendants' actions in denying Mr. Milazzo eligibility for consideration for furlough and placement at the Farm."[32] Therefore, the Court will not address the special conditions of parole in this case as they are not properly before the Court.

Finally, the Court will construe Mr. Milazzo's Complaint as seeking injunctive relief with respect to his right to rehabilitation under the Alaska Constitution.[33] But even construing the Complaint as such, the claim is moot because Mr. Milazzo is no longer in

---

[31] *See Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985) ("This case neither challenges a court order which, by its own terms, expires in a few days nor raises questions which are mooted by the termination of a nonjudicial activity that is of short duration.").

[32] Docket 44-1 (Proposed Order) at 2.

[33] *See* Docket 1-1 at 12, ¶¶ c, d (requesting injunctive relief ordering that practice of treating those charged with sex offenses as sex offenders cease for purposes of Farm employment); Docket 45 at 13 ("In light of the rehabilitative aspects of placement at the Farm, Mr. Milazzo has a right to a fair and impartial consideration for such placement that he was denied.").

custody and no longer subject to DOC's policies or practices that allegedly bar him from participating in rehabilitative programs.[34]  Accordingly, Defendants are entitled to summary judgment on Mr. Milazzo's Claims 6 through 10 that sought injunctive relief from Defendant State of Alaska, DOC, and Defendant Conant.

## IV. Claims for Damages

In addition to his claims for injunctive relief, Mr. Milazzo brings five federal claims seeking damages against Defendants Chynoweth, Garner, and Bialka.[35]  Defendants argue that they are entitled to qualified immunity on these claims.  Qualified immunity shields public officials performing discretionary functions from liability for civil damages under § 1983 so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."[36]  "A right is clearly established for purposes of qualified immunity if, at the time the right was allegedly violated, its contours were sufficiently clear that a reasonable official would understand that what he is doing violates that right."[37]  "[C]learly established law should not be defined

---

[34] The Alaska Supreme Court has held that "the right to rehabilitation does not create a right to furlough for all prisoners."  *Hertz v. Macomber*, 297 P.3d 150, 158 (Alaska 2013).  Rather, DOC is granted broad discretion to determine which prisoners are entitled to furlough, and such discretion can only be overcome by a showing that the prisoner was "denied fair and impartial consideration and that DOC was motivated to impose particular furlough release conditions for an improper purpose."  *Id.* at 159.  Mr. Milazzo's denial of furlough was due to the police reports which contain allegations of sexual misconduct, a factor DOC may properly consider when determining whether an inmate is entitled to early release.  Accordingly, even if the claim was not moot at this time, it would fail on the merits.

[35] *See supra* at 5–6, Claims 1–5.

[36] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[37] *May v. Baldwin*, 109 F.3d 557, 561 (9th Cir. 1997) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal quotation marks omitted).

at a high level of generality . . . . [It] must be particularized to the facts of the case."[38]  Mr.

Milazzo bears the burden of demonstrating that his rights to procedural due process and

equal protection under the U.S. Constitution were clearly established.[39]

### 1. Federal Right to Procedural Due Process

Mr. Milazzo asserts that Defendants are not entitled to qualified immunity because

the Ninth Circuit's decision in *Neal v. Shimoda* clearly established "that before inmates

could be stigmatized and labeled [as sex offenders,] the inmate was entitled to procedural

due process on par with that afforded in a disciplinary hearing and as set forth in *Wolff v.*

*McDonnell.*"[40]  Mr. Milazzo asserts that Defendants had sufficient notice of this right

because *Neal* was decided by the Ninth Circuit nearly 20 years ago, and federal courts

since *Neal* have held that violations of this type violate clearly established law.[41]  To

prevail on this argument, Mr. Milazzo must demonstrate that *Neal* presents similar

circumstances to his case, such that Defendants Chynoweth, Garner, and Bialka were

clearly on notice that their failure to provide Mr. Milazzo with a hearing violated Mr.

Milazzo's right to due process.

In *Neal*, the Ninth Circuit addressed two cases in which inmates were compelled

to participate in Hawaii's Sex Offender Treatment Program ("SOTP"), a program which

---

[38] *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) and *Anderson*, 483 U.S. at 640 (internal quotation marks omitted)).

[39] *May*, 109 F.3d at 561.

[40] Docket 55 (Pl. Opp'n) at 3, 9–10 (citing *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) and *Neal v. Shimoda*, 131 F.3d 818, 822 (9th Cir. 1997)); *see also* Docket 44-1 (Pl.'s Proposed Order) at 12; Docket 81 (Pl.'s Reply) at 2.

[41] Docket 55 (Pl. Opp'n) at 10 (citing *Coleman v. Dretke*, 395 F.3d 216, 224 (5th Cir. 2004)).

required inmates to successfully complete sex offender treatment and admit to the sexual offenses charged against them as a pre-condition of parole release. One of the prisoners, Mr. Neal, had been indicted for a sex offense, and the presentence report contained allegations of sexual misconduct. However, pursuant to a plea agreement, the State dismissed the sex offense charges and Mr. Neal pleaded guilty to robbery, among other violent felonies. Nevertheless, Mr. Neal was classified by the Hawaii Department of Public Safety ("DPS") as a "sex offender" based on a review of his records. Mr. Neal asserted that DPS's classification implicated a liberty interest subject to the protections of procedural due process, which had not been accorded to him.

The Ninth Circuit held that "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections."[42] Accordingly, the Ninth Circuit held that Mr. Neal was entitled to notice of the reason for the sex offender classification, as well as "a hearing at which he must be allowed to call witnesses and present documentary evidence in his defense" before the state could require his participation in the SOTP as a condition to parole eligibility.[43] But in the case of the other prisoner, who had been convicted of a sex crime in a prior criminal

---

[42] *Neal*, 131 F.3d at 830; *see also Vitek v. Jones*, 445 U.S. 480, 490–91 (1980) ("[I]f the State grants a prisoner a right or expectation that adverse action will not be taken against him except upon the occurrence of specified behavior, 'the determination of whether such behavior has occurred becomes critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed.'" (quoting *Wolff*, 418 U.S. at 558)).

[43] *Neal*, 131 F.3d at 831.

proceeding, the Ninth Circuit held that he had already received the minimum procedural protections required by due process.[44]

Mr. Milazzo also cites a Fifth Circuit case, *Coleman v. Dretke*, to support his assertion that he was entitled to an evidentiary hearing before being treated as a sex offender for Farm employment and furlough purposes. In *Coleman*, the inmate was also charged with a sex offense and the underlying police reports contained allegations of sexual misconduct, but pursuant to a plea agreement, Mr. Coleman was convicted only of misdemeanor assault.[45]  When Mr. Coleman was released from prison, the parole panel required him to attend sex offender therapy, without according any procedural protections to Mr. Coleman before imposing that requirement.  Mr. Coleman failed to enroll or participate in therapy, as a result of which his parole was revoked.  The Fifth Circuit held that "the Due Process Clause . . . provides Coleman with a liberty interest in freedom from the stigma and compelled treatment on which his parole was conditioned, and the state was required to provide procedural protections before imposing such conditions."[46]

In this case, DOC determined that the facts surrounding Mr. Milazzo's Coercion conviction constituted an offense that was sexual in nature based on its review of the relevant documents from the underlying criminal case.  As a result, Mr. Milazzo was deemed ineligible for Farm employment and furlough.  But the Court finds there is a

---

[44] *Id.*

[45] *Coleman*, 395 F.3d at 219.

[46] *Coleman*, 395 F.3d at 223.

significant distinction between the liberty interests at stake in *Neal* and *Coleman* ("highly invasive" mandatory sex offender treatment as a condition of parole eligibility) and the interests at stake in Mr. Milazzo's case (a prison employment opportunity and furlough eligibility).[47]  Moreover, based on the evidence presented, the Court finds a substantial difference between the stigmatizing effect in both *Neal* and *Coleman* and any stigmatization that resulted from DOC's internal treatment of Mr. Milazzo as a sex offender for employment and furlough purposes.  For unlike in *Neal*, Mr. Milazzo was never publicly identified as a sex offender; he was not required to complete sex offender treatment while in prison; and he was not required to admit to being a sex offender as a condition of parole eligibility.  And unlike the prisoner in *Coleman*, Mr. Milazzo was not potentially subject to psychiatric medication and treatment with plethysmographs.[48] While Mr. Milazzo has filed declarations from other inmates who opined based on circumstantial evidence that DOC was treating Mr. Milazzo as a sex offender because he was not hired for the electrician job on the Farm;[49] any such stigmatization is limited in scope and distinguishable from the far more concrete and public stigmatization the prisoners experienced in *Neal* and *Coleman*.

The other cases Mr. Milazzo cites in support of his assertion that he had a liberty interest in Farm employment and furlough eligibility are also factually distinct from Mr.

---

[47] Mr. Milazzo acknowledges that "[he] was not placed into a program similar to the State of Hawaii's SOTP program."  Docket 44-1 (Proposed Order) at 5.

[48] *Coleman,* 395 F.3d at 223 n.28.

[49] *See* Docket 81-1 (Wiglesworth Decl.), 81-2 (Van Camp Decl.), 81-3 (Gamber Decl.).

Milazzo's case.[50]   And Defendants cite to cases that support their assertion that Mr.

Milazzo had no constitutionally protected liberty interest in eligibility for Farm employment

or furlough.[51]   For example, in *Hertz v. Macomber*, the Alaska Supreme Court explicitly

held that a prisoner does not have a federally protected liberty interest in furlough release

and cited several federal circuit and district court decisions that had reached the same

conclusion.[52]   In sum, the Court finds that Mr. Milazzo does not have a constitutionally

protected liberty interest in Farm employment or furlough.   Indeed, Mr. Milazzo

acknowledged that to be the case at oral argument, but argued that even without a

constitutionally protected liberty interest he is still entitled to procedural due process

protections.[53]   But the Due Process Clause of the 14th Amendment only constrains

governmental decisions when a liberty or property interest is at stake.[54]   Accordingly, Mr.

---

[50] *See Chambers v. Colorado Dep't of Corr.*, 205 F.3d 1237 (10th Cir. 2000) (holding that by *removing* the benefit of good time credit from those labeled sex offenders, CDOC created a liberty interest in inmate not being labeled a sex offender) (emphasis added); *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999) (per curiam) (holding that prisoner who was not convicted of a sex offense is entitled to procedural due process before state declares him sex offender and requires him to undergo sex offender treatment in prison that involves admitting to past sexual misconduct as a precondition of parole eligibility).

[51] *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) ("[T]he Due Process Clause of the Fourteenth Amendment does not create a property or liberty interest in prison employment.") (internal quotation marks omitted); *Baumann v. Arizona Dep't of Corr.*, 754 F.2d 841, 843–44 (9th Cir. 1985) ("A prisoner has no independent constitutional right to conditional release before the expiration of a valid sentence." (citing *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979))).

[52] *See Hertz v. Macomber*, 297 P.3d 150, 157 n.27 (Alaska 2013); *see also Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985) (considering out-of-circuit cases, including district court and state court cases from other circuits, to determine whether a right was clearly established in the absence of Ninth Circuit precedent); *Wilson v. Layne*, 526 U.S. 603, 617 (1999) (noting that in the absence of "a consensus of cases of persuasive authority" a rule was not "clearly established").

[53] Docket 83 (Minute Entry for Oral Argument).

[54] *See Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests

Milazzo's acknowledged lack of a liberty interest in Farm employment and furlough eligibility is fatal to his federal due process claims. Moreover, even if Mr. Milazzo has a liberty interest in Farm employment or furlough eligibility, any such right was not clearly established at the time of the alleged violation. Therefore, Defendants Chynoweth, Garner, and Bialka are entitled to qualified immunity on Claims 1 through 3.

### 2. State Right to Procedural Due Process

Defendants correctly observe that Mr. Milazzo's state law claims in his Complaint seek only injunctive relief. And, as discussed above, Mr. Milazzo's claims for injunctive relief against DOC and Defendant Conant will be dismissed.[55]

### 3. Federal Right to Equal Protection

In Claims 4 and 5, Mr. Milazzo argues that Defendants have violated his right to equal protection under the U.S. Constitution. But rather than argue that he belongs to a protected class, Mr. Milazzo argues that he has not been treated the same as other inmates who also were not convicted of a sex offense. Federal law recognizes a

---

within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").

[55] Moreover, even if Mr. MIlazzo had sought damages for alleged state constitutional violations, Defendants Chynoweth, Garner, and Bialka would be entitled to discretionary immunity under state law. *See Latham v. Palin*, 251 P.3d 341 (Alaska 2011) (applying Alaska Statute 09.50.250 to plaintiff's due process claims and holding that the challenged government action was entitled to discretionary function immunity which "protects government decisions entailing planning or policy formation"). Any state due process claim for damages would also fail on its merits, as Alaska law makes clear that Mr. Milazzo does not have a protected liberty interest under Alaska law in either Farm employment or furlough. *See Ferguson v. Dep't of Corr.*, 816 P.2d 134, 139 (Alaska 1991) ("Under Alaska law, however, prisoners have an enforceable interest in *continued* participation in rehabilitation programs." (emphasis added)); *Hertz*, 297 P.3d at 157 ("[T]he right to rehabilitation does not create a right to furlough for all prisoners.").

cognizable equal protection claim brought by a "class of one," if a plaintiff demonstrates "that []he has been intentionally treated differently from others similarly situated and that there is a no rational basis for the difference in treatment."[56] The Court finds that here, the decision to treat inmates where there has been a probable cause finding of sexual misconduct differently from inmates with no such finding for purposes of Farm employment and furlough eligibility is rationally related to the goal of protecting the general public, and more specifically the families and communities that live close to the Farm. Accordingly, Mr. Milazzo cannot show that Defendants' conduct violated his federal right to equal protection. Thus, Defendants Chynoweth, Garner, and Bialka are entitled to summary judgment on Mr. Milazzo's federal equal protection claims.[57]

## CONCLUSION

For the foregoing reasons, the Court finds that Mr. Milazzo's claims for injunctive relief will be dismissed against Defendants Conant and the State of Alaska, Department of Corrections. Defendants Chynoweth, Garner, and Bialka are entitled to summary judgment on each of Mr. Milazzo's claims for damages under the U.S. Constitution. The Court will not address Defendants' other arguments regarding the merits of Mr. Milazzo's claims, res judicata, or failure to exhaust administrative remedies as they are unnecessary for the resolution of this action. Because Defendants are entitled to

---

[56] *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

[57] Any claim for equal protection under the Alaska Constitution would also not survive summary judgment, because the policy of treating inmates charged with sex offenses differently for purposes of Farm employment and furlough eligibility is substantially related to the legitimate goal of public safety. *See Pub. Emps.' Ret. Sys. v. Gallant*, 153 P.3d 346, 349 (Alaska 2007); *Gonzalez v. Safeway Stores, Inc.*, 882 P.2d 389, 396 (Alaska 1994).

summary judgment on all claims, Mr. Milazzo's motion for partial summary judgment will be denied.

IT IS ORDERED:

1. Plaintiff's motion for partial summary judgment at Docket 44 is DENIED;

2. Defendants' motion for summary judgment at Docket 46 is GRANTED; and

3. The Clerk of Court is directed to enter a judgment accordingly.

DATED this 21st day of April, 2017.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE